UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TE CONNECTIVITY
CORPORATION,

    Plaintiff,

v.

SUMITOMO ELECTRICAL WIRING
SYSTEMS, INC.

    Defendant.

Case No.

Hon.

_____

## COMPLAINT

Plaintiff TE Connectivity Corporation ("TE"), through its attorneys, Troutman Pepper Hamilton Sanders LLP, for its Complaint states as follows:

## INTRODUCTION

A party may not be compelled to participate in an arbitration to which it did not consent. Defendant Sumitomo Electrical Wiring Systems, Inc. ("SEWS") seeks to violate this important legal principle. On January 24, 2022, SEWS filed a Notice of Arbitration against TE arising out of an ongoing supply chain cost dispute between these suppliers to the automotive industry. But TE never agreed to arbitrate its disputes with SEWS. While SEWS points to an arbitration provision contained within its own Global Terms and Conditions, TE made clear in response to SEWS' orders that TE's acceptance of the orders was conditional upon SEWS' assent to

TE's Terms and Conditions of Sale. SEWS thereafter assented to TE's Terms and Conditions. During the time period relevant to this dispute, SEWS accepted and paid for the delivery of goods from TE, subject to the TE Terms and Conditions of Sale, without objection. The TE Terms and Conditions of Sale therefore govern the sale of goods between the parties. Importantly, TE's Terms and Conditions of Sale do not include an arbitration provision.

Moreover, even if SEWS did not assent to TE's Terms and Conditions of Sale, TE's conditional acceptance operated as a rejection of the SEWS Global Terms and Conditions. Accordingly, under Article 2 of the Uniform Commercial Code, the parties' supply relationship would be governed by the terms upon which they agree, together with any supplementary terms from the U.C.C., none of which include an arbitration provision. Under no circumstances is the parties' supply relationship subject to arbitration. TE brings this action to obtain a declaratory judgment that it is not subject to the arbitration initiated by SEWS and a permanent injunction enjoining such arbitration from proceeding.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff TE, together with its affiliates, is a global industrial technology leader, with a broad range of connectivity and sensor solutions in transportation, industrial applications, medical technology, energy, data communications and consumer households. TE is incorporated under the laws of

Pennsylvania with its registered office in Berwyn, Pennsylvania. TE maintains an office located in Troy, Michigan.

2. Upon information and belief, Defendant SEWS is incorporated under the laws of Delaware and maintains its headquarters in Bowling Green, Kentucky. SEWS maintains an office located in Farmington Hills, Michigan.

3. Jurisdiction is proper in this Court as the parties purposefully availed themselves of the privilege of acting within this State by directly involving their respective Michigan locations and personnel in the underlying commercial transaction and related dispute.

4. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties have complete diversity of citizenship and the amount in controversy is greater than $75,000.

5. Venue is proper in this District under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### TE'S TERMS AND CONDITIONS OF SALE

6. TE, together with its affiliates, is a global leader in supplying connector and terminal components for automotive and other applications.

7. SEWS is a manufacturer of wire harnesses, which it supplies to various original equipment manufacturers ("OEMs").

8. As various government restrictions relating to the global

COVID-19 pandemic began to lift in May 2020, TE supplied SEWS with electrical connector terminal parts, cable assemblies, relays, tubing and other related parts (collectively, the "Parts") for incorporation into SEWS' wiring harness products.

9. SEWS' wiring harness products were thereafter supplied to various OEMs for installation in their consumer vehicles.

10. TE supplied the Parts to SEWS through a defined process. After SEWS was selected by certain OEMs as the Tier I supplier, it typically issued a Request for Quotation to TE for the Parts. TE thereafter issued a Quotation for the Parts, which incorporated the TE Terms and Conditions of Sale ("TE T&Cs") by reference.

11. From time to time, SEWS would issue Purchase Orders or Scheduling Agreement releases to TE to request the purchase of a specific quantity of the Parts. SEWS' Purchase Orders purported to incorporate its Global Terms and Conditions ("SEWS T&Cs").

12. In response to SEWS' Purchase Orders or Scheduling Agreement releases, TE would issue Order Acknowledgments.

13. Both in the TE T&Cs and/or the Order Acknowledgments, TE made clear that the sale and purchase of the Parts between TE and SEWS are governed by the TE T&Cs.

14. Specifically, the TE T&Cs provide, *inter alia*, that "Any term or

condition in any printed form of Buyer . . . which is in any way inconsistent or in addition to the terms and conditions hereof is hereby expressly rejected, and Seller's acceptance of any offer or order of Buyer is hereby expressly made in reliance on Buyer's assent to all terms and conditions hereof . . ."

15. Moreover, certain of the Order Acknowledgments expressly state on their face that TE's acceptance of the Purchase Orders or Scheduling Agreement releases was conditional on SEWS' assent to the TE T&Cs. Those Order Acknowledgments stated that "TE Connectivity's acceptance of customer's order is expressly conditioned upon customer's acceptance of all TE Connectivity's standard Terms and Conditions of sale set forth on TE Connectivity's website."

16. The TE T&Cs further provided SEWS with the opportunity to object to the terms within ten calendar days and clearly noted that "Failure to so object shall be conclusively deemed to be acceptance of the terms and conditions hereof."

17. During all times relevant to this Complaint, SEWS accepted delivery of and paid for the Parts from TE without objection.

18. SEWS therefore assented to the TE T&Cs, and as such, the TE T&Cs governed the parties' supply relationship.

19. Alternatively, even if SEWS did not assent to the TE T&Cs, TE's conditional acceptance operated as a rejection and counteroffer of SEWS' Purchase

Orders and Scheduling Agreement releases such that no contract was formed under SEWS' T&Cs.  If SEWS did not assent to TE's conditional acceptance, then the parties' conduct – rather than their writings – established a contract.  Under U.C.C. § 2-207(3), the parties' contract is governed by the terms on which the parties agree, together with any supplementary terms incorporated under the Uniform Commercial Code, none of which include an arbitration provision.  Under no circumstance did the parties make an agreement to arbitrate.

### *SEWS' UNSUBSTANTIATED CLAIMS AND ARBITRATION DEMAND*

20. Since the onset of the COVID-19 global pandemic in March 2020, automotive suppliers have been faced with industry-wide shortages of parts and raw materials.

21. Despite the immense challenges to the entire global automotive industry, TE has supplied the Parts to SEWS as timely as practicable and otherwise consistent with TE's affirmative contractual obligations.

22. TE's performance notwithstanding, SEWS has repeatedly asserted that it has incurred damages as a result of allegedly delayed deliveries by TE.

23. Specifically, SEWS alleges that, between July 1, 2020 and March 31, 2021, TE failed to timely deliver the Parts in the quantities requested.  SEWS claims that it incurred $26.1 million in expedited air freight charges, line down

expenses, and other related charges solely because of TE's alleged failure to timely deliver the Parts.

24. TE fully disputes SEWS claim, as it complied with its contractual requirements to SEWS.

25. Yet, SEWS has repeatedly demanded that TE pay $26.1 million notwithstanding TE's full performance.

26. Despite TE's categorical defenses to SEWS' claims, it has sought to negotiate a resolution of this dispute in good faith for over a year.

27. As part of these negotiations, TE reasonably requested that SEWS substantiate its purported $26.1 million in damages with documentation that demonstrates causation and supports the financial harm allegedly incurred by SEWS.

28. After numerous requests for this corroboration, SEWS has, to date, only produced partial documentation on a fraction of its financial claim, amounting to approximately 20% of the alleged claim. Further, this small subset of documents failed to establish TE as the proximate cause of SEWS' alleged costs. Moreover, because the documents produced by SEWS have been incomplete, it is not possible to discuss potential resolution of even this small portion of the claim.

29. Notwithstanding its failure to provide the necessary documentation, SEWS continued to demand payment of the entire alleged $26.1

million balance.

30. In response to each SEWS demand for payment, TE responded with its reasonable request for documentation to support SEWS' alleged claim.

31. Rather than provide additional documentation to substantiate its claim so the parties could engage in good faith commercial discussions, SEWS served a purported Notice of Arbitration ("Notice of Arbitration") on TE on January 24, 2022. (Notice of Arbitration, Ex. 1).

32. In its Notice of Arbitration, SEWS alleges that the instant dispute is subject to arbitration pursuant to Section 19.8 of SEWS' T&Cs.

33. TE is not contractually bound to Section 19.8 of SEWS' T&Cs. As a result, the parties' dispute is properly before this Court.

## COUNT I
## DECLARATORY JUDGMENT

34. TE incorporates its preceding allegations by reference.

35. The parties dispute their respective rights under the Purchase Orders, Scheduling Agreement releases, and Order Acknowledgments exchanged between the parties.

36. An actual controversy exists between the parties regarding their respective rights under disputed contractual terms sufficient to warrant the Court declaring the rights of the parties.

37. TE is entitled to a court declaration that TE is not legally bound

to arbitrate SEWS' asserted claims in the Notice of Arbitration.

## COUNT II
## INJUNCTIVE RELIEF

38. TE incorporates its preceding allegations by reference.

39. TE is entitled to a permanent injunction enjoining the Arbitration purportedly commenced by SEWS on January 24, 2022.

40. TE is likely to succeed on the merits of its claim that the instant dispute is not subject to arbitration because the plain language of the TE T&Cs and Order Acknowledgments make clear that the TE T&Cs, which do not contain an arbitration provision, govern the parties' supply relationship. Alternatively, if SEWS did not assent to the TE T&Cs, the parties' agreement is governed by the terms on which they agree, together with any supplementary terms incorporated under the Uniform Commercial Code, none of which include an arbitration provision.

41. TE will suffer irreparable harm if the injunction is not issued because it will be forced to either participate in an arbitration to which it did not consent, or abstain and risk a default.

42. Conversely, SEWS would not suffer any harm by an injunction ordering it to honor its contractual obligations.

43. Finally, the issuance of an injunction protecting a litigant from

participating in an arbitration to which it did not consent is in the public interest.

## PRAYER FOR RELIEF

**WHEREFORE,** TE requests this Honorable Court order as follows:

A. Declaratory relief under 28 U.S.C. § 2201 that TE is not bound to arbitrate SEWS' asserted claims in the January 24, 2022 Notice of Arbitration;

B. Permanent injunctive relief under Fed. R. Civ. P. 65 enjoining the purported arbitration commenced by SEWS on January 24, 2022;

C. An award of actual legal fees and other costs to TE; and

D. All such other relief as this Court may deem just, equitable, or appropriate under the circumstances.

Respectfully submitted,

*/s/ Sean P. McNally*
Sean P. McNally (P66292)
Joshua L. Zeman (P80055)
TROUTMAN PEPPER HAMILTON SANDERS LLP
4000 Town Center, Suite 1800
Southfield, MI  48075
(248) 359-7300
sean.mcnally@troutman.com
josh.zeman@troutman.com

Dated: February 11, 2022