UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TE CONNECTIVITY
CORPORATION,

                Plaintiff,

                                Civil Case No. 22-10283

v.                               Honorable Linda V. Parker

SUMITOMO ELECTRICAL WIRING
SYSTEMS, INC.,

                Defendant.
_____/

## **OPINION AND ORDER**

Plaintiff TE Connectivity Corporation ("TE") initiated this diversity lawsuit against Defendant Sumitomo Electrical Wiring Systems, Inc. ("SEWS") seeking a determination as to whether the parties must submit their ongoing supply chain cost dispute to arbitration. TE argues that it never agreed to arbitration in the parties' contract. SEWS contends otherwise and filed a notice of arbitration early this year. The matter is currently before the Court on SEWS' motion to dismiss (ECF No. 6), which has been fully brief (ECF Nos. 7, 9).

## I.    **Standard of Review**

SEWS seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78

F.3d 1125, 1134 (6th Cir. 1996).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Both parties rely on matters outside TE's pleading in support of their arguments for or against SEWS' pending motion. Specifically, they rely on their respective terms and conditions and the documents exchanged as part of their transactions. Neither party objects to the other party's use of these matters. As these materials are referenced in TE's Complaint and are central to the claims contained therein, the Court concludes that it may properly consider them here.

## II.   Factual and Procedural Background

TE and SEWS are parties to supply contracts. TE supplies electrical connector terminal parts, cable assemblies, relays, tubing, and other related parts to

SEWS that SEWS incorporates into finished wire harness products sold to original

equipment manufacturers ("OEMS") for installation in consumer vehicles.

(Compl. ¶¶ 8, 9, ECF No. 1 at Pg ID 4.)  The parts were supplied through a defined

process.  (*Id*. ¶ 10, Pg ID 4.)

After SEWS was selected by OEMS as a "tier I supplier," it issued a request

for quotation to TE for parts.  (*Id*.)  TE thereafter issued a Quotation for the parts,

which incorporated by reference TE's Terms and Conditions of Sale ("TE T&Cs").

(*Id*.)

From time to time, SEWS issued Purchase Orders ("POs") or Scheduling

Agreement releases to TE, requesting to purchase a specific quantity of parts.  (*Id*.

¶ 11, Pg ID 4.)  The POs incorporated by reference SEWS' Global Terms and

Conditions ("SEWS T&Cs").  (*Id*.)  As relevant to the current dispute, the SEWS

T&Cs contain a dispute resolution provision, requiring binding arbitration if less

formal mediation efforts are unsuccessful.  (SEW T&Cs ¶ 19.8, ECF No. 1-1 at Pg

ID 49.)

In response to SEWS POs or Scheduling Agreement releases, TE issued

Order Acknowledgments.  (Compl. ¶ 12, ECF No. 1 at Pg ID 4.)  The Order

Acknowledgements referenced the TE T&Cs and "certain of the Order

Acknowledgments" stated that TE's "acceptance of customer's order is expressly

conditioned upon customer's acceptance of" the TE T&Cs.  (*Id.* ¶ 15, Pg ID 5;

Order Acknowledgment, ECF No. 7-2 at Pg ID 174.)  The TE T&Cs contain this

language:

> The terms and conditions set forth herein as well as any terms and
> conditions printed on the face of Seller's order acknowledgment
> constitute the sole and entire agreement between Seller and the
> buyer ("Buyer") of goods and/or services from Seller with respect
> to the subject matter hereof.  Any term or condition in any printed
> form of Buyer, including but not limited to any order, confirmation
> or other document, which is in any way inconsistent with or in
> addition to the terms and conditions hereof is hereby expressly
> rejected, and Seller's acceptance of any offer or order of Buyer is
> hereby expressly made in reliance on Buyer's assent to all terms
> and conditions hereof.  If Buyer objects to any of the terms or
> conditions hereof, such objection must be made in writing and
> received by Seller within ten (10) calendar days after placing a
> purchase order. Failure to so object shall be conclusively deemed to
> be acceptance of the terms and conditions hereof.

(TE T&Cs ¶ 1, ECF No. 7-3 at Pg ID 177.)

TE thereafter shipped and SEWS accepted delivery of and paid for the parts.

(Compl. ¶ 17, ECF No. 1 at Pg ID 5.)  The parties' relationship presumably went

smoothly until the onset of the COVID-19 pandemic, at which time TE allegedly

failed to timely deliver parts to SEWS in the quantities requested.  (*Id.* ¶ 23, Pg ID

6.)  SEWS alleges that it incurred $26.1 million in damages between July 1, 2020

and March 31, 2021, due to TE's shipping delays.  (*Id.*)

When the parties' attempts to negotiate this dispute were unsuccessful,

SEWS served TE with a Notice of Arbitration.  (*Id.* ¶¶ 26-31, Pg ID 7-8.)  TE

responded by filing the present lawsuit in which it seeks a declaration that it is not

legally bound to arbitrate the dispute and an injunction enjoining the arbitration.
(*See id*. ¶¶ 34-43, Pg ID 8-9.)  TE maintains that its Order Acknowledgments were
"conditional acceptances" under Uniform Commercial Code § 2-207(1), meaning
that its acceptance was subject to SEWS accepting the TE T&Cs, which contain no
arbitration provision.  (*Id*. ¶¶ 14-15, Pg ID 4-5.)  TE asserts that by accepting
delivery of parts without objection to the TE T&Cs, SEWS assented to the TE
T&Cs.  (*Id*. ¶¶ 17-18, Pg ID 5.)

Alternatively, TE argues that if SEWS did not assent to the TE T&Cs, TE's
Order Acknowledgments constituted a rejection and counteroffer and no written
contract was formed.  (*Id*. ¶ 19, Pg ID 5-6.)  Instead, TE contends, the parties'
contract is governed by the terms on which they agreed under UCC § 2-207(3).
(*Id*.)

SEWS responds that TE's Order Acknowledgments did not qualify as
conditional acceptances under § 2-207(1) and thus constituted acceptances to
SEWS' POs and Scheduling Agreements, which incorporated the arbitration
provision.  SEWS argues:

> [T]he fact that TE's Order Acknowledgments purported to bind
> SEWS to TE's [t]erms through *mere silence* in the face of TE's
> Acknowledgments establishes as a matter of law that TE was *not*
> "unwilling to proceed" with the transaction absent affirmative
> "assurance" by SEWS that TE's [t]erms would govern and control,
> to the exclusion of SEWS' [t]erms.

(SEWS Br. in Supp. of Mot. at 15, ECF No. 6 at Pg ID 79 (emphasis in original).) Silence or inaction, SEWS asserts, " 'could never' be recognized as assent to the seller's additional or different terms[.]"  (*Id*. at Pg ID 80.)

## III.  Applicable Law and Analysis

The parties agree that Michigan law governs this case as well as its adoption of UCC § 2-207 in Michigan Compiled Laws § 440.2207.  (*See id.* at 11, Pg ID 75; TE Response Br. at 8, ECF No. 7 at Pg ID 158.)  Each of the parties' analysis also start from the position that SEWS's POs or Scheduling Agreements—rather than TE's Quotation—constituted the initial offers.  (*See generally id.*)

Section 202-7, referred to as the "Battle of the Forms" provision, as implemented in Michigan, reads:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, *unless* acceptance is *expressly made* conditional on *assent* to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

7

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

Mich. Comp. Laws § 440.2207 (emphasis added).  Subsection (1) "provides as a general rule that an acceptance is effective although it states terms which are additional to or different from those in the offer." *Ralph Shrader, Inc. v. Diamond Int'l Corp.*, 833 F.2d 1210, 1213 (6th Cir. 1987).  There is a proviso to this general rule, however: "an acceptance is not effective if the acceptance is expressly conditional on assent." *Id*.  Stated differently:

[U]nder Subsection (1), a contract is recognized notwithstanding the fact that an acceptance or confirmation contains terms additional to or different from those of the offer or prior agreement, *provided* that the offeree's intent to accept the offer is definitely expressed, . . . *and* provided that the offeree's acceptance is not expressly conditioned on the offeror's assent to the additional or different terms.

*Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1166 (6th Cir. 1972) (emphasis added).

"The conditional assent provision has been narrowly construed to require that the acceptance must clearly reveal that the offeree is *unwilling to proceed* unless *assured of the offeror's assent* to the additional or different terms." *Challenge Mach. Co. v. Mattison Mach. Works*, 359 N.W.2d 232, 235 (Mich. Ct.

8

App. 1984) (emphasis added) (citing *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924, 926 (9th Cir. 1979) and *Dorton*, 453 F.2d at 1168). "That the acceptance is predicated on the offeror's assent must be directly and distinctly stated or expressed rather than implied or left to inference." *Dorton*, 453 F.2d at 1168 (quotation marks and citation omitted). In *Challenge Machinery*, the court held that this provision did not generate a conditional acceptance: "buyer expressly limits acceptance to the terms hereof and no different or additional terms proposed by seller shall become part of the contract." 359 N.W.2d at 234, 235. Nor was a conditional acceptance generated by the seller's statement in *Dorton* that its acceptance "is subject to" its terms and conditions. 453 F.2d at 1164, 1168. The same conclusion was reached in *Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503 (6th Cir. 2006), where the "PO stated that acceptance was limited to its terms" but "did not clearly indicate that [the other party's] failure to [assent to those terms] voided the transaction." *Id*. at 506.

In comparison, in *Ralph Shrader*, the Sixth Circuit found that the seller c[ould] be no clearer in conditioning acceptance than it was in stating, "The terms set forth on the reverse side are the *only ones upon which we will accept orders*." 833 F.3d at 1215 (emphasis in original). In *SFEG Corporation v. Blendtec, Inc.*, No. 3:15-cv-0466, 2017 WL 395041 (M.D. Tenn. Jan. 30, 2017) (unpublished), language that "[t]he Seller's acceptance of any order is expressly subject to

9

Buyer's assent to each and all of the terms and conditions set forth below" was found to "essentially mirror[] that of the § 2- 2701(1) proviso[.]" *Id.* at *6. Similarly, here, the language in TE's Order Acknowledgments stating that its "acceptance of [SEWS'] order is *expressly conditioned upon [SEWS]' acceptance* of all TE Connectivity's standard Terms and Conditions" conveyed that acceptance was limited to the terms in the TE T&Cs *and* SEWS' assent to those terms.

SEWS argues that this is not so because TE's Order Acknowledgements contemplated SEWS' assent through mere silence. The Order Acknowledgments stated:

> If Buyer objects to any of the terms or conditions hereof, such objection must be made in writing and received by Seller within ten (10) calendar days after placing a purchase order. *Failure to so object* shall be conclusively deemed to be acceptance of the terms and conditions hereof.

(TE T&Cs ¶ 1, ECF No. 6-2 at Pg ID 89 (emphasis added).) [1] As silence is an insufficient manner of acceptance as a matter of law, *see SFEG Corp.*, 2018 WL 395041, at *7 (citing cases), SEWS maintains that the Order Acknowledgments do

---

[1] SEWS notes that, further undercutting TE's conditional acceptance, is TE's allegation that only "certain' of the Order Acknowledgments expressly state on their face that TE's acceptance of the Purchase Orders or Scheduling Agreement releases was conditional on SEWS' assent to the TE T&Cs." (SEWS Br. in Supp. of Mot. at 15 n. 3, ECF No. 6 at Pg ID 79 (quoting Compl. ¶ 15, ECF No. 1 at Pg ID 5).) However, according to TE, the Order Acknowledgments made clear that the transactions were governed by the TE T&Cs (Compl. ¶ 13, ECF No. 1 at Pg ID 4), and the TE T&Cs contain the relevant language. (TE T&Cs ¶ 1, ECF No. 6-2 at Pg ID 89.)

not express TE's unwillingness to proceed absent SEWS' assent.[2]  However, this argument conflates the issue of whether TE's Order Acknowledgments constituted conditional acceptances with the issue of how SEWS could have assented to the TE T&Cs on which TE's acceptance was conditioned.

In *Ralph Shrader*, the Sixth Circuit concluded that the seller's acceptance was conditional even though the acceptance indicated that the buyer's assent would be gleaned from its silence.  833 F.2d at 1214-15 (reasoning that "the language taken as a whole clearly indicates that [the seller] would accept only on its terms . . . While failure to so advise obviously does not require a conclusion of assent . . . the clause does show [the seller]'s attempt to create a contract only on its terms"); *see also McJunkin Corp. v. Mechanicals, Inc.*, 888 F.2d 481, 488 (6th Cir. 1989) (concluding that acknowledgment form contained conditional acceptance despite indicating that purchaser's failure to object within ten days would be deemed a waiver of its objections to the seller's additional terms). Construing TE's Order Acknowledgments as conditional acceptances means that they did not, by themselves, create a contract.  Rather, SEWS express assent to the additional and different terms was required.

---

[2] SEWS argues that this case is analogous to *Dorton* because both cases "involve identical assent-through-non-objection language[.]"  (SEWS Reply Br. at 4, ECF No. 9 at Pg ID 193.)  Yet *Dorton* is distinguishable because, preceding that language, the offeree did not express an unwillingness to proceed absent the offeror's assent.  *See supra*.

Thus the next question here—as it was in *Ralph Shrader*, *McJunkin Corporation*, and *SPEG Corporation*—is whether SEWS assented to the TE T&Cs.  TE alleges in its Complaint that SEWS consented to the TE T&Cs by accepting delivery of and paying for the parts without objection.  (Compl. ¶¶ 17-18, ECF No. 1 at Pg ID 5.)  SEWS' argument in support of dismissal, however, does not go beyond its assertions that TE's acceptance was not conditional and, if conditional, SEWS silence did not constitute its assent.  In other words, SEW does not address TE's claim that SEWS assented through receipt of and payment for the parts.  It is not this Court's role or place to make arguments for the parties.[3]  *See United States v. Bradley*, 917 F.3d 493, 511 (6th Cir. 2019) (citing *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017)) ("It is not our role to fashion new law without the benefits of the adversarial system, in which the parties evaluate the strengths and weaknesses of each other's arguments."); *see also Brenay*, 709 F. App'x at 337 (citing *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("[I]t is not for the court to search the record and construct arguments.  Parties must do that for themselves.").

---

[3] The Sixth Circuit has held that, as a matter of law, where an offeror performs a contract after receiving an acceptance conditioned on additional terms, the performance, alone, does not compel the conclusion that the offeror assented to the terms.  *Ralph Shrader*, 833 F.2d at 1215; *see also McJunkin Corp.*, 888 F.2d at 488.  Nevertheless, at this stage, the facts are insufficiently developed to assess whether a jury could find that SEWS assented to TE's additional terms or whether assent can not be established as a matter of law.

Moreover, " 'assent' under Michigan law is a question for the trier of fact." *Ralph Shrader*, 833 F.2d at 1215.

Section 2-2207 provides that additional terms may "be construed as proposals for addition to the contract" and "become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."  Mich. Comp. Laws § 440.2207(2).  However, TE indicates that it is not relying on § 2-207(2) because the section applies to only *unconditional* acceptances containing additional terms and its acceptance was conditional.  (TE Resp. Br. at 18, ECF No. 7 at Pg ID 168.) SEWS agrees that subsection (2) is inapplicable.  Although SEWS relies on the fact that it expressly limited acceptance to the SEWS T&Cs.  (Br. in Supp. of Mot. at 21, ECF No. 6 at Pg ID 85 (quoting SEWS T&Cs ¶ 1.3, ECF No. 1-1 at Pg ID 22).)

The parties also agree, at least at this stage, that § 2-207(3) is inapplicable. (*Id*.; TE Resp. Br. at 18, ECF No. 7 at Pg ID 168.)  SEWS maintains that "[b]ecause SEWS and TE formed contracts through their written offers and acceptances under subsection (1), subsection (3) does not apply."  (SEWS Br. in Supp. of Mot. at 21, ECF No. 6 at Pg ID 85.)  TE argues that subsection (3) only will apply "if the trier of fact determines that SEWS did not assent to the TE T&Cs

following issuance of TE's conditional acceptance under § 2-207(1)." (Resp. Br.
at 18, ECF No. 7 at Pg ID 168.)

In short, at this stage of the proceedings, the Court cannot determine as a
matter of law that the arbitration provision in SEWS T&Cs governs the parties'
dispute.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint
(ECF No. 6) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 5, 2022

14